UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **REMONDA L. WALLER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3584 |
| | § | |
| **JO ANNE B. BARNHART, Commissioner** | § | |
| **of Social Security,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from the denial of Social Security disability benefits are the parties' cross-motions for summary judgment. After reviewing the parties' filings and the applicable law, the Court finds that Plaintiff's motion, Docket No. 11, should be and hereby is **GRANTED** and that Defendant's motion, Docket No. 14, should be and hereby is **DENIED**.

## I.   BACKGROUND

Plaintiff Remonda Waller is thirty-five years old. Her alleged disability onset date is May 1, 2001. Waller has a long history of violent and destructive behavior[1] and often harbors homicidal thoughts. Though she has not, since her onset date, acted violently toward another human being, she occasionally engages in destructive behavior, such as breaking objects and locking herself away from others for hours at a time.

During 2002, Waller was hospitalized four times as the result of "blackout" episodes lasting between ten and thirty minutes each. Family members have noted that

---

[1] For instance, when Waller was a child, her grandmother gave her a puppy, which Waller drowned in scalding water because it was not of the precise breed that she had wanted. On another occasion, she stabbed a classmate in the hand with a pencil for talking too much. Waller expressed no remorse for either act.

1

Waller shakes violently during these episodes, which resemble seizures. Waller also reports that, for the last few years, she has suffered migraines four or five times per week, lasting from several hours to several days at a time and causing her to see spots, vomit, and become hypersensitive to light. Waller also experiences periodic visual and auditory hallucinations and short- and long-term memory deficits. In late 2002, Waller gained forty pounds in a two-month period, during which she experienced feelings of inflated self-esteem and the sense that she was invincible.

Throughout 2002, Waller sought medical treatment for her headaches and other symptoms. Over the course of that year, various doctors prescribed a combination of butalbital and acetaminophen (commonly known as Esgic-Plus) that acts as a barbiturate and analgesic with side effects including lightheadedness, dizziness, sedation, nausea, vomiting, sweating, and appetite loss; tizanidine (commonly known as Zanaflex), a muscle relaxant with side effects including sleepiness, tiredness, and weakness; propranolol (commonly known as Inderal), a beta-blocker with side effects of tiredness and weakness; amitriptyline (commonly known as Elavil), a tricyclic anti-depressant with side effects including sedation and blurred vision; risperidone (commonly known as Risperdal), an antipsychotic with side effects of sleeplessness, agitation, anxiety, uncontrolled movements, and headache; fluoxetine (commonly known as Prozac), a selective serotonin reuptake inhibitor with side effects including headache, anxiety, nervousness, and sleeplessness; hydrocodone (commonly known as Vicodin), a narcotic and analgesic with side effects including lightheadedness, dizziness, and sleepiness; rizatriptan (commonly known as Maxalt), an anti-migraine drug with side effects including nausea, tiredness, and tingling in the hands and feet; topiramate (commonly

known as Topamax), an anti-convulsant with side effects including slow reflexes and thought processes; and divalproex (commonly known as Depakote), an anticonvulsant with side effects including nausea, vomiting, diarrhea, abdominal pain, dizziness, sedation, and sleepiness.

Waller has been diagnosed by various treating physicians as suffering from antisocial personality disorder and bipolar disorder, in addition to the migraines. Electroencephalograms (EEGs), computed topography (CT) scans, and magnetic resonance imaging (MRI) tests have revealed no organic abnormalities that explain her symptoms.

In April 2002, Waller applied to Defendant, the Commissioner of Social Security (the "Commissioner") for Social Security disability benefits. Her claim was denied initially and on reconsideration, and she requested an administrative hearing. At that hearing, administrative law judge ("ALJ") Lantz McClain heard testimony from Waller; her stepfather, Marvin Minnifield; Medical Expert ("ME") Glenn Sternes; and Vocational Expert ("VE") Wallace Stanfill. The ALJ subsequently denied Waller's claim, finding Waller not disabled on the basis of the ME's opinion that she does not suffer from a listed impairment or its equivalent and the VE's opinion that she is capable of performing the full range of light work. Waller timely filed this appeal, and both parties now move for summary judgment.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a

matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 4777 U.S. 317, 322 (1986) (internal quotation marks omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Id.* at 255.

### B.     Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence."  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  "It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence."  *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

A claimant can establish a disability in one of two ways: (1) by proving, at step three, that she possesses one of the listed impairments or its equivalent, or (2) by satisfying the first four steps, at which point the burden then shifts to the Commissioner to establish that the claimant is capable of performing "substantial gainful activity" and therefore is not disabled. *Id.* When the claimant presents the diagnosis or opinion of a treating physician, Social Security regulations require the ALJ to give that diagnosis or opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

5

evidence of record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not entitled to controlling weight, the ALJ considers the following factors in determining the weight to be given the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability, defined as medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization of the physician; (6) other evidence supporting or contradicting the opinion. *Id.* A treating physician's opinion concerning a purely legal issue is entitled to no weight. *Id.* § 404.1527(e).

### D.     Waller's Claim

Waller argues that she suffers from a listed impairment or its equivalent: namely, bipolar disorder, one of the class of affective disorders. According to listing § 12.04, an affective disorder is "[c]haracteized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

A claimant suffering from bipolar disorder satisfies the required showing of severity when she establishes both (A) that her bipolar syndrome is characterized by "a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)" and (B) that the syndrome results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated

6

episodes of decompensation, each of extended duration. *Id.* She can also satisfy the listing by establishing both (A), above, and (C) that she has a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside [of] a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* Finally, she may demonstrate disability due to an impairment that is "medically equivalent to a listed impairment," based upon medical diagnoses supported by medically acceptable clinical and laboratory techniques. *Id.* § 404.1526(a).

The ALJ decided, and the parties agree, that Waller has satisfied condition (A) above by demonstrating a well-documented history and current diagnosis of bipolar syndrome. The ALJ found, however, that Waller could not establish either (B) or (C), as required by the listing. Waller contends that this was error.

At the administrative hearing, the ME testified that Waller did not satisfy condition (B), as she is only mildly restricted in the activities of daily living, mildly to moderately limited in social functioning, and mildly limited in concentration, persistence, or pace, with no episodes of decompensation during the relevant period. (ALJ's Decision at 5 (Admin. Rec. at 25).) The ME further opined that no evidence supported a finding that any of the (C) criteria were met. (*Id.*) According to the ME, Waller is capable of performing simple and repetitive tasks and is, therefore, employable. The ALJ found the ME's opinion "credible and consistent with the medical evidence of record when

7

considered in its entirety," *id.*, and adopted it, along with the VE's subsequent testimony that Waller is capable of performing the full range of light work.

The ALJ's conclusion is erroneous. The record contains the reports and records of several treating physicians, all of which confirm Waller's diagnoses of bipolar disorder, antisocial personality disorder, and migraine headaches, and which reflect that she suffers frequent and severe bouts of fainting, dizziness, blackouts, poor concentration and short-term memory, low energy, weight fluctuations, sleep disturbances, homicidal ideation, visual and auditory hallucinations, and possible psychosis. (*See* Reports and Records of Dr. Eileen Starbranch, Admin. Rec. at 287-305; Records of Spring Branch Medical Center, Admin. Rec. at 259-67, 273-82.) These documents reflect the appropriate use of legitimate medical and diagnostic techniques, including blood chemical analysis, urinalysis, and various tests, including CT scans and MRIs. (*See id.*)

They are, moreover, consistent with the other substantial record evidence, such as the testimony of Waller and her stepfather. Even the ME himself testified that some questions regarding the effect of Waller's symptoms on her ability to work were more properly posed to her physicians:

> Q (Waller's attorney): Okay. All right. She also has a significant history of migraines. How does that play into your assessment of her abilities to maintain pace, concentration and persistence?
>
> A: I imagine that there are different kinds of migraines, but I am sure that it diminishes the ability to concentrate. It depends on the type of pain and how long it takes before she is – can get back into, you know, full working ability. I guess that would be more appropriate to ask a physician.

(Admin. Rec. at 47.)

The Commissioner did, in fact, ask a physician. In support of Waller's application for disability benefits, Dr. Starbranch completed a mental status report, which

8

solicited comments on Waller's "[a]bility to relate to others and to sustain work" and "[a]bility to respond to change/stress in work settings." (Admin. Rec. at 291.) In each blank, Dr. Starbranch wrote "No." (*Id.*) Dr. Starbranch is joined in this assessment by Dr. Donald Gibson, who evaluated Waller for the Disability Determination Services of the Texas Rehabilitation Commission in September 2002 and who concluded that Waller's blackouts were likely the results of seizures or similarly severe migraine-related problems and that "she will not be able to work or drive" until a cause and a cure are identified. (Admin. Rec. at 214.) Another consistent opinion is that of Dr. Sujit Varma, a psychiatrist at the Health Science Center of the University of Texas, Houston, who evaluated Waller in September 2002. Dr. Varma diagnosed Waller as suffering from migraines, bipolar disorder, antisocial personality disorder, and possible intermittent explosive disorder and seizures. (Admin. Rec. at 219.) According to Dr. Varma, these conditions and their attendant symptoms render Waller unable to exercise good judgment, relate to other people, refrain from destructive behavior, or control her own finances. (*Id.* at 218.)

Based upon all of this evidence, the Court concludes that the reports of Waller's treating physicians are consistent with the other record evidence and should, therefore, have been given controlling weight. The ALJ's failure to do so was prejudicial error. Accordingly, the Commissioner's motion is **DENIED**, Waller's motion is **GRANTED**, and the ALJ's decision is **VACATED** and **REMANDED** for further proceedings not inconsistent with this Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 27th day of July, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**